IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2018-NMSC-020

Filing Date: March 1, 2018

Docket No. S-1-SC-35641

NATALIE F. GARCIA,

      Plaintiff-Respondent,

v.

HATCH VALLEY PUBLIC SCHOOLS,

      Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Douglas R. Driggers, District Judge**

German Burnette & Associates, LLC
Ethan Watson
Elizabeth L. German
Albuquerque, NM

for Petitioner

John P. Mobbs
El Paso, TX

Law Firm of Daniela Labinoti, P.C.
Daniela Labinoti
El Paso, TX

for Respondent

## OPINION

**MAES, Justice.**

**{1}** Plaintiff Natalie Garcia, *née* Watkins, sued her former employer, Defendant Hatch Valley Public Schools (HVPS), for employment discrimination under the New Mexico Human Rights Act (NMHRA), NMSA 1978, § 28-1-7(A), (I) (2004). Plaintiff alleged that

HVPS terminated her employment as a school bus driver based on her national origin, which she described as "German" and "NOT Hispanic." HVPS successfully moved for summary judgment in the district court, and the Court of Appeals reversed, focusing on Plaintiff's "primary contention" that HVPS had discriminated against her and terminated her employment because she is not Hispanic. *Garcia v. Hatch Valley Pub. Schs.*, 2016-NMCA-034, ¶¶ 11, 48, 369 P.3d 1.

**{2}** We granted certiorari under Rule 12-502 NMRA and reverse the Court of Appeals. We hold that summary judgment in HVPS's favor was appropriate because Plaintiff failed to establish a prima facie case of discrimination and failed to raise a genuine issue of material fact about whether HVPS's asserted reason for terminating her employment was pretextual. In so holding, we also conclude that (1) the Court of Appeals properly focused on Plaintiff's contention that she is not Hispanic in analyzing her discrimination claim, (2) Plaintiff may claim discrimination under the NMHRA as a non-Hispanic, and (3) the plain language of the NMHRA does not place a heightened evidentiary burden on a plaintiff in a so-called "reverse" discrimination case.

## I. BACKGROUND

**{3}** HVPS hired Plaintiff as a school bus driver in August of 2008 and renewed her contract for the 2009-2010 school year. In April of 2010, HVPS notified Plaintiff by letter that it would "terminate" her employment at the end of her contract and that it would not offer her a contract for the 2010-2011 school year. HVPS explained that it was terminating Plaintiff's employment "due to an unsatisfactory evaluation."

**{4}** Plaintiff filed a complaint against HVPS with the Equal Employment Opportunity Commission (EEOC) alleging race and national origin discrimination under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e to 2000e-17 (2012). Plaintiff contended that her supervisor, Stephanie Brownfield, had discriminated and retaliated against her because Plaintiff is White and non-Hispanic. The EEOC issued an order of non-determination, and Plaintiff timely filed suit, alleging *inter alia* claims of discrimination and retaliation under the NMHRA, Section 28-1-7(A), (I), based upon Plaintiff's race and national origin. After a series of procedural steps, most of which are not relevant to this appeal, Plaintiff narrowed her complaint to a claim of discrimination under the NMHRA based on her national origin, which she characterized as "German" and "NOT Hispanic."

**{5}** HVPS later moved for summary judgment and we address the summary judgment proceedings in detail below. For present purposes, we note that the district court ruled in HVPS's favor, concluding that the uncontroverted evidence showed that Brownfield was unaware that Plaintiff was of German descent and that Plaintiff's national origin, therefore, could not have been a motivating factor in the termination of her employment. The district court concluded in the alternative that Plaintiff had failed to raise a genuine issue of material fact to establish that HVPS's "stated legitimate business reason for the termination of her employment was pretextual."

2

**{6}** Plaintiff appealed, and the Court of Appeals reversed. *Garcia*, 2016-NMCA-034, ¶ 49. The Court focused on Plaintiff's claim that she was discriminated against because she is not Hispanic and applied the federal burden-shifting framework that we approved in *Smith v. FDC Corp.* for analyzing a discrimination claim under the NMHRA to HVPS's motion for summary judgment. 1990-NMSC-020, ¶ 9, 109 N.M. 514, 787 P.2d 433 ("The evidentiary methodology adopted [in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)] provides guidance for proving a violation of the [NMHRA]."). The Court of Appeals concluded that Plaintiff had established a prima facie case of discrimination and had raised a genuine issue of material fact on the issue of pretext, citing evidence of a Hispanic employee who reportedly had a dirty bus but was not fired. *Garcia*, 2016-NMCA-034, ¶¶ 45, 47. The Court therefore held the ultimate question of whether HVPS had discriminated against Plaintiff was for the jury to decide. *See id.* ¶¶ 46-47. We review additional facts and procedural history as necessary throughout this opinion.

## II.    DISCUSSION

**{7}** We granted certiorari on three issues: (1) whether the Court of Appeals erred in analyzing Plaintiff's claim for *national origin* discrimination as a claim for reverse *racial* discrimination; (2) if the Court of Appeals properly analyzed Plaintiff's national origin discrimination claim as a reverse racial discrimination claim, whether the Court erred in holding that so-called reverse discrimination plaintiffs do not have to meet a higher standard under the NMHRA; and (3) whether the Court of Appeals erred in reversing the district court's grant of summary judgment in favor of HVPS. These are questions of law, which we review de novo. *See Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 8, 139 N.M. 12, 127 P.3d 548.

### A.    The Court of Appeals Properly Focused on Plaintiff's Contention that She Is Not Hispanic in Analyzing Her Discrimination Claim

**{8}** As a threshold issue, we first address an aspect of this case that became unnecessarily complicated due to HVPS's litigation strategy in the district court. We discuss the issue in some detail to discourage similar tactics that needlessly consume the resources of courts and litigants alike. Like the Court of Appeals, we hold that the district court improperly focused on whether Brownfield knew that Plaintiff was of German descent when it granted summary judgment in HVPS's favor. *See Garcia*, 2016-NMCA-034, ¶ 10. We consider Plaintiff's alleged Germanic origins to be a false issue in this case, inserted only in response to HVPS's formalistic challenge to a routine discrimination claim.

**{9}** Throughout this litigation, Plaintiff's consistent position has been that she was treated differently than her Hispanic coworkers and ultimately terminated because she is not Hispanic. Plaintiff identified herself in her original complaint as "a female citizen of the United States of America," and she alleged that she "was subjected to discrimination . . . because of her race and/or national origin being of Caucasian descent." *See* § 28-1-7(A) (prohibiting discrimination by an employer based, *inter alia*, on a person's race or national

origin). Plaintiff elaborated that she was treated differently than her coworkers "due to her not being Hispanic." She also alleged specific examples of how she was treated differently from various coworkers, whom she described as "being of Hispanic Origin" or "of Hispanic descent."

**{10}** HVPS moved for judgment on the pleadings and, in its motion, revealed that it fully understood the basis of Plaintiff's claim. In HVPS's own words, "Plaintiff is apparently claiming she was discriminated against because she is a white non-Hispanic American." HVPS argued, however, that Plaintiff had failed to state a claim for *racial* discrimination because "White persons and Hispanic persons are both of the Caucasian race." HVPS similarly argued that Plaintiff had failed to state a claim for *national origin* discrimination because Plaintiff had failed to specify her national origin; more specifically, HVPS argued that identifying herself as an "American citizen" was insufficient. HVPS summed up the nature of its argument as follows at the hearing on its motion:

> I'm not denying that there can be discrimination based on one's ethnicity, but those are more properly alleged or more properly pled in the [NMHRA] under other issues besides race or national origin. If they are under national origin, there has to be a national origin. American does not cut it.

> It's not our job to help the plaintiff plead her case. She pleads her case, and then we respond.

**{11}** The district court denied the motion but specifically found that "Plaintiff's Complaint [did] not set forth the elements necessary to state a cause of action for national origin discrimination." The district court therefore gave Plaintiff leave to amend her complaint and warned that "her cause of action will be dismissed unless the Amended Complaint sets forth the elements necessary to go forward with her claims." Plaintiff promptly amended her complaint, dropping *racial* discrimination as a basis for recovery and amending her *national origin* discrimination claim by describing herself for the first time as "German" and "of German descent." Her amended complaint, however, continued to allege that "she was treated differently than other . . . workers due to the fact that she was **NOT Hispanic**" and continued to describe her coworkers who allegedly received more favorable treatment as "**ALL Hispanic**." (Bold face in original.)

**{12}** Defendant eventually moved for summary judgment on the grounds that Plaintiff had failed to raise a genuine issue of material fact that Plaintiff's supervisor, Brownfield, knew that Plaintiff is German. The motion for summary judgment did not meaningfully address that Plaintiff's national origin discrimination claim also was based on her being NOT

4

Hispanic.[1] The district court granted summary judgment in HVPS's favor, specifically finding that Plaintiff's national origin discrimination claim failed because Brownfield was not aware of Plaintiff's German national origin, and therefore Plaintiff's national origin "could not, as a matter of law, have been a motivating factor in the termination of her employment."

{13} This procedural history evinces an approach to litigation that we have repeatedly criticized. We have held that "the principal function of pleadings is to give fair notice of the claim asserted." *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 12, 335 P.3d 1243 (quoting *Malone v. Swift Fresh Meats Co.*, 1978-NMSC-007, ¶ 10, 91 N.M. 359, 574 P.2d 283). We also have emphasized "our policy of avoiding insistence on hypertechnical form and exacting language." *Zamora*, 2014-NMSC-035, ¶ 10. The record is clear that HVPS understood the basis for Plaintiff's claim from the beginning of this litigation—that she was discriminated against because she is not Hispanic. Equally clear is that HVPS has never argued that the *New Mexico* Human Rights Act permits discrimination between Hispanics and non-Hispanics in the workplace. And rightly so; such an argument would be preposterous. *Cf., e.g.*, *State ex rel. League of Women Voters of N.M. v. Advisory Comm. to the N.M. Compilation Comm'n*, 2017-NMSC-025, ¶¶ 25-34, 401 P.3d 734 (reviewing the history of state constitutional provisions that prohibit discrimination against New Mexico's Spanish-speaking population with respect to voting and educational rights).

{14} HVPS's argument, instead, has always been semantic: the discrimination alleged by Plaintiff is based on "ethnic characteristics" and therefore does not amount to *racial* or *national origin* discrimination. Notably, the NMHRA does not explicitly prohibit discrimination based on one's ethnicity or "ethnic characteristics." *See* § 28-1-7(A) (prohibiting discrimination based on "race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition"). We therefore suspect that HVPS would have made similar arguments had Plaintiff based her claims on her color or ancestry; for example, that Whites and Hispanics are both the same color, or that being White and of Caucasian descent are not proper descriptors of one's ancestry. HVPS does not identify which of the remaining classes protected under the NMHRA—if any—could bear the weight of Plaintiff's claim.

{15} HVPS's semantic attacks on Plaintiff's claims embody the "technical niceties or procedural booby traps New Mexico left behind more than seventy years ago." *Zamora*, 2014-NMSC-035, ¶ 14 (internal quotation marks omitted). Unfortunately, its strategy

---

[1]HVPS argues for the first time on appeal that Plaintiff similarly failed to introduce admissible evidence that Brownfield was aware that Plaintiff is not Hispanic or perceived Plaintiff as not Hispanic. HVPS did not make this argument in the district court, and we therefore decline to address it on appeal. *See Juneau*, 2006-NMSC-002, ¶ 12 ("Not having requested or received a ruling on the question of protected activity, [the defendant] failed to preserve any such challenge for consideration by this Court.").

5

succeeded and led to the addition of an allegation that was used as a basis for dismissing her lawsuit. Had Plaintiff's Germanic origins been at the root of her discrimination claim, perhaps summary judgment for HVPS would have been appropriate based on Brownfield's asserted lack of knowledge that Plaintiff is German. *See, e.g.*, *Kruger v. Cogent Commc'ns, Inc.*, 174 F. Supp. 3d 75, 82-83 (D.D.C. 2016) (denying a motion to dismiss a claim for national origin discrimination because the complaint alleged that plaintiff's supervisor made statements and references to the plaintiff's German last name and referred to the plaintiff as a "Nazi"). But to allow HVPS to avoid a jury trial by sidestepping Plaintiff's primary theory of liability—that her employment was terminated because she is not Hispanic—would elevate form over substance. By its own admission, HVPS had adequate notice of the actual basis of Plaintiff's discrimination claim from the beginning of the lawsuit. *See, e.g.*, *Salas v. Wisc. Dep't of Corrs.*, 493 F.3d 913, 923 (7th Cir. 2007) (holding that the plaintiff's national origin claim based upon being Hispanic did not deprive the employer "of notice or otherwise hamper its ability to defend the claim"). We therefore focus on the gravamen of Plaintiff's complaint, that she was subjected to national origin discrimination because she is not Hispanic.

## B.      Plaintiff May Claim Discrimination Under the NMHRA as a Non-Hispanic

{16}    We turn to HVPS's argument that the Court of Appeals improperly analyzed Plaintiff's *national origin* discrimination claim as a *racial* discrimination claim. Based on our review of the NMHRA, Title VII, and the federal courts' inconsistent interpretations of national origin and racial discrimination under Title VII, we hold that the distinction is immaterial in this case when Plaintiff has consistently claimed that HVPS discriminated against her because she is not Hispanic.

{17}    We have not addressed the precise contours of national origin discrimination under the NMHRA and whether it encompasses discrimination against a person who is Hispanic or non-Hispanic. *But cf. Gonzales v. N.M. Dep't of Health*, 2000-NMSC-029, ¶¶ 1, 11, 129 N.M. 586, 11 P.3d 550 (noting that the jury had found against the plaintiff on her discrimination claim based on her "Hispanic national origin"). In considering the issue, we look for guidance to interpretations of federal employment discrimination law under Title VII. *See Smith*, 1990-NMSC-020, ¶ 9 (looking to federal interpretation of the Civil Rights Act of 1964 for "guidance for proving a violation of the [NMHRA]"). We emphasize that interpretations of federal law are merely persuasive and that we analyze claims under the NMHRA based upon the statute and our interpretation of the Legislature's intent. *See id.*

{18}    Both the NMHRA and Title VII prohibit discrimination based on a number of traits, including national origin. *See* § 28-1-7(A) (prohibiting discrimination on the basis of a person's "race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition," as well as a person's spousal affiliation, sexual orientation, or gender identity in certain circumstances); 42 U.S.C. § 2000e-2(a) (2012) (prohibiting discrimination based upon a person's "race, color, religion, sex, or national origin"). Neither law defines national origin or national origin discrimination. *See generally*

6

NMSA 1978, § 28-1-2 (2007) (defining certain terms as used in the NMHRA); 42 U.S.C. § 2000e (defining certain terms used in Title VII). Similarly, neither law defines the related terms "race," "color," or "ancestry," or discrimination based on those characteristics.[2]

**{19}**    The EEOC, as the executive agency charged with enforcing Title VII, has defined the term "national origin discrimination" for its purposes as discrimination based on (1) the place of origin of a person or a person's ancestors, or (2) the "physical, cultural[,] or linguistic characteristics of a national origin group."  29 C.F.R. § 1606.1 (2017) ("The [Equal Employment Opportunity] Commission defines national origin discrimination broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group.").  Discrimination against a Hispanic or non-Hispanic person thus would fall squarely under the second prong of the EEOC's definition as unequal treatment based on the person's "national origin group." *See* U.S. Equal Emp't Opportunity Comm'n, No. 915.005, *EEOC Enforcement Guidance on National Origin Discrimination*, § II(B) (2016) ("National origin discrimination also includes discrimination against a person because she does *not* belong to a particular ethnic group, such as less favorable treatment of employees who are *not* Hispanic.").

**{20}**    The EEOC's interpretation of Title VII, however, is merely persuasive. *See Vill. of Freeport v. Barrella*, 814 F.3d 594, 607 n.47 (2d Cir. 2016) ("[T]he EEOC's interpretation is entitled at most to so-called *Skidmore* deference—i.e., 'deference to the extent it has the power to persuade.'" (quoting *Townsend v. Benjamin Enters.*, 679 F.3d 41, 53 (2d Cir. 2012)).  The lack of a controlling definition has resulted in divergent views in the federal courts about the boundary between discrimination based on national origin and discrimination based on race. *See, e.g.*, *Salas*, 493 F.3d at 923 ("In the federal courts, there is uncertainty about what constitutes race versus national origin discrimination under Title VII.").

**{21}**    With regard to the specific issue of discrimination against Hispanics and non-Hispanics under Title VII, federal courts agree that such discrimination is prohibited, but they often struggle to identify the source of that prohibition. *See, e.g.*, *Vill. of Freeport*, 814 F.3d at 606 ("Title VII obviously affords a cause of action for discrimination based on Hispanic ethnicity—but why?").  Some have held that discrimination against Hispanics and non-Hispanics is based on race. *See, e.g.*, *id.* at 607 ("[D]iscrimination based on ethnicity, including Hispanicity or lack thereof, constitutes racial discrimination under Title VII.").  Others have held that such discrimination is based on national origin. *See, e.g.*, *Salas*, 493

---

[2]The NMHRA includes ancestry in its list of protected characteristics.  Title VII does not. *But see Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88-89 (1973) (noting that an earlier version of Title VII included the term "ancestry" and that deletion of the term from the final version of Title VII "was not intended as a material change, suggesting that the terms 'national origin' and 'ancestry' were considered synonymous" (citation omitted)).

F.3d at 923 ("[A] plaintiff alleging that he is Hispanic sufficiently identifies his national origin to survive summary judgment."). And others simply avoid the question altogether. *See, e.g.*, *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 459 (S.D.N.Y. 1998) ("Whether being Hispanic constitutes a race or a national origin category is a semantic distinction with historical implications not worthy of consideration here.").

**{22}** The takeaway from these cases is that terms like race and national origin, as well as related terms like ancestry and ethnicity, often overlap, even to the point of being factually indistinguishable. *See Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 614 (1987) (Brennan, J., concurring) ("[T]he line between discrimination based on 'ancestry or ethnic characteristics' and discrimination based on 'place or nation of . . . origin' is not a bright one. . . . Often, however, the two are identical as a factual matter: one was born in the nation whose primary stock is one's own ethnic group. Moreover, national origin claims have been treated as ancestry or ethnicity claims in some circumstances. For example, in the Title VII context, the terms overlap as a legal matter." (first omission in original) (citations omitted)).

**{23}** We find this reasoning persuasive and conclude that the precise label that Plaintiff chose to describe her claim is less important than her consistent allegations that she was treated differently than her Hispanic coworkers because she is not Hispanic. As we already have explained, HVPS does not argue that such discrimination is permitted under the NMHRA. Whether denominated as discrimination based on her race, national origin, ancestry, or any combination thereof, HVPS was fully apprised of the basis of her claim, and that is all that we require. *See Zamora*, 2014-NMSC-035, ¶ 14 (holding that a complaint that "highlighted the key facts and actors relevant to [the plaintiff's] cause of action" and that emphasized the main theory of liability "adequately informed [the defendant] of the general nature of [the plaintiff's] claim"); *see also Salas*, 493 F.3d at 923 (holding that the plaintiff's national origin claim based upon being Hispanic did not deprive the employer "of notice or otherwise hamper its ability to defend the claim").

**C.      The Plain Language of the NMHRA Does Not Place a Heightened Evidentiary Burden on a Plaintiff in a So-Called "Reverse" Discrimination Case**

**{24}** Before we turn to the merits of HVPS's motion for summary judgment, we pause to address the Court of Appeals' significant detour into the issue of so-called "reverse" discrimination under federal law, an issue that was not raised or briefed by the parties in the district court or on appeal. *See Garcia*, 2016-NMCA-034, ¶¶ 16-43. In analyzing Plaintiff's claim of national origin discrimination, the Court took upon itself to answer whether the NMHRA and our caselaw place a higher evidentiary burden on a plaintiff who does not "belong[] to a racial minority." *Id.* ¶¶ 17-18. After a detailed review of the various approaches taken by federal courts, the Court of Appeals concluded that a consistent standard for "both discrimination and reverse discrimination plaintiffs . . . reflects the purpose and philosophy behind Title VII as expressed by the United States Supreme Court." *Id.* ¶¶ 19-43. The Court therefore held that it would "analyze a reverse discrimination claim as [it] would [analyze] any racial discrimination claim." *Id.* ¶ 43.

8

**{25}** We expressly disavow any reliance on reverse discrimination cases in analyzing a claim under the NMHRA. The plain language of the NMHRA does not distinguish between particular "race[s], age[s], religion[s], color[s], national origin[s], ancestr[ies], sex[es], physical or mental handicap[s] or serious medical condition[s]." Section 28-1-7(A); *but see Cates v. Regents of the N.M. Inst. of Mining & Tech.*, 1998-NMSC-002, ¶ 18, 124 N.M. 633, 954 P.2d 65 (holding that "40 years old marks the minimum age in the protected age class in cases of employment discrimination under the [NMHRA]"). The NMHRA, simply and clearly, prohibits unlawful discrimination based on the traits declared by the Legislature to be worthy of protection. *Accord McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 278-79 (1976) (holding that Title VII's "terms are not limited to discrimination against members of any particular race" and thus prohibit "[d]iscriminatory preference for *any* [racial] group, *minority* or *majority*" (alterations in original) (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)); *Lind v. City of Battle Creek*, 681 N.W.2d 334, 334-35 (Mich. 2004) (holding that the language of the Michigan Civil Rights Act "draws no distinctions between individual plaintiffs on account of race," and therefore a "majority" plaintiff need not present more evidence than a "minority" plaintiff to prevail on a discrimination claim (internal quotation marks and citation omitted)). Therefore, under the plain language of the NMHRA, its protections and requirements apply equally to all plaintiffs, regardless of their minority or majority status. *See Sims v. Sims*, 1996-NMSC-078, ¶ 22, 122 N.M. 618, 930 P.2d 153 ("[T]he courts will not add to such a statutory enactment, by judicial decision, words which were omitted by the legislature." (quoting *State ex rel. Miera v. Chavez*, 1962-NMSC-097, ¶ 7, 70 N.M. 289, 373 P.2d 533)).

**D.      Summary Judgment Was Appropriate in this Case**

**{26}** The final question in this appeal is whether Plaintiff came forward with sufficient evidence to survive HVPS's motion for summary judgment. The Court of Appeals reversed the district court's grant of summary judgment in HVPS's favor, citing evidence that one of Plaintiff's coworkers had complained to another HVPS employee—who was not Plaintiff's supervisor—about a Hispanic coworker who had a dirty bus. *See Garcia*, 2016-NMCA-034, ¶¶ 47-48. For reasons that will become clear below, this evidence was insufficient to create a genuine issue of material fact about whether HVPS intentionally discriminated against Plaintiff when it terminated her employment. The question we therefore must answer is whether Plaintiff's other evidence was sufficient to survive HVPS's motion for summary judgment.

**{27}** The standard for summary judgment is well-established:

> Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Where reasonable minds will not differ as to an issue of material fact, the court may properly grant summary judgment. All reasonable inferences are construed in favor of the non-moving party.

9

*Romero v. Philip Morris, Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280 (quoting *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971). Before we apply this standard, we must look to the substantive law governing the dispute because it is the filter through which we must determine whether genuine issues of material fact exist. *See Romero*, 2010-NMSC-035, ¶ 11 (quoting *Farmington Police Officers Ass'n v City of Farmington*, 2006-NMCA-077, ¶ 17, 139 N.M. 750, 137 P.3d 1204).

**{28}**　Plaintiff has not offered direct evidence of intentional discrimination, so we apply the burden-shifting methodology that we approved in *Smith* for analyzing a discrimination claim based upon indirect evidence. *See* 1990-NMSC-020, ¶ 10-11. Under *Smith*, a plaintiff first must establish a prima facie case of discrimination, which creates a presumption that discrimination has occurred. *See id.* ¶¶ 9 n.1, 11. The defendant then may rebut the presumption by producing evidence that "the plaintiff was dismissed based on a nondiscriminatory motivation." *Id.* Once rebutted, the presumption of discrimination "drops from the case." *Bovee v. State Highway & Transp. Dep't*, 2003-NMCA-025, ¶ 14, 133 N.M. 519, 65 P.3d 254 (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)). The plaintiff may then offer evidence that the employer's proffered nondiscriminatory reason was "pretextual or otherwise inadequate." *Juneau*, 2006-NMSC-002, ¶ 9.

### 1.　Plaintiff Did Not Establish a Prima Facie Case of Discrimination

**{29}**　In *Smith*, we stated a formulation of the prima facie case for termination under which the plaintiff must show that (1) she is a member of a protected class, (2) she was qualified to continue in her position, (3) her employment was terminated, and (4) "[her] position was filled by someone not a member of the protected class." *Id.* ¶ 11. *Smith* also clarified that a prima facie case could be established "through other means" when a plaintiff cannot demonstrate that she was replaced by someone not in the protected class. *Id.* In that circumstance, we held that a plaintiff could satisfy the fourth element of the prima facie case with evidence that "[she] was dismissed purportedly for misconduct nearly identical to that engaged in by one outside of the protected class who was nonetheless retained." 1990-NMSC-020, ¶ 11.

**{30}**　*Smith* thus recognized that the prima facie case "was not intended to be an inflexible rule." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575 (1978). "The facts necessarily will vary in Title VII cases, and the specification of the prima facie proof required from [a] respondent is not necessarily applicable in every respect to differing factual situations." *Id.* at 575-76 (alterations omitted) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802 n.13). The purpose of the prima facie case is to permit an inference of discrimination by ruling out "the most common nondiscriminatory reasons for the plaintiff's [discriminatory treatment]." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981). The "prima facie case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Id.* at 254 (quoting *Furnco*, 438 U.S. at 577).

10

**{31}** In a claim alleging discriminatory *termination*, the requirements that we approved in *Smith* were intended to rule out "the most common nondiscriminatory reasons for the plaintiff's [termination]" under the circumstances of a particular case. *Burdine*, 450 U.S. at 253-54. In this case, Plaintiff alleged in her complaint that Brownfield notified her that her contract would not be renewed because of her "performance." Therefore, under the circumstances of this case, the fourth element of the prima facie case must be modified to permit Plaintiff to show that "[she] was dismissed purportedly for [performance] nearly identical to [the performance of] one outside of the protected class who was nonetheless retained." *See Smith*, 1990-NMSC-020, ¶ 11. Without such a showing, an inference of discrimination is not warranted because Plaintiff has not ruled out the most common nondiscriminatory reasons for her termination, namely, that her performance was materially different than the performance of her Hispanic coworkers.

**{32}** Plaintiff failed to come forward with evidence to establish the fourth element of the prima facie case as modified above. Instead, Plaintiff proffered evidence purporting to show that she was treated less favorably than her Hispanic coworkers in a variety of ways, some of which were unrelated to her performance or termination. Plaintiff's evidence consisted of testimony about isolated instances of asserted unequal treatment with respect to various Hispanic coworkers, including (1) the scheduling and assignment of bus routes, (2) compensation for pre- and post-trip inspection time, (3) maintaining a clean bus, and (4) enforcement of post-accident testing and suspension policies. None of this evidence purported to show that one or more Hispanic employees' performance was "nearly identical" to Plaintiff's performance as a whole. *Smith*, 1990-NMSC-020, ¶ 11. Plaintiff's evidence therefore is insufficient to rule out the most common nondiscriminatory reasons for the termination of her employment.

**{33}** We do not mean to suggest that Plaintiff had to produce evidence of an employee whose performance was a carbon copy of her own. *Cf. Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1354 (2015) (noting that the prima facie case does not "require the plaintiff to show that those whom the employer favored and those whom the employer disfavored were similar in all but the protected ways"). But without some basis for meaningful comparison of Plaintiff's job performance with the performance of at least one Hispanic employee, Plaintiff's proffered evidence was insufficient to establish a prima facie case of discriminatory termination. Put simply, Plaintiff's evidence does not support an inference that HVPS terminated her employment because she is not Hispanic.

## 2. HVPS's Asserted Nondiscriminatory Reason

**{34}** Even if we were to assume that Plaintiff established a prima facie case of discrimination, her claim would not survive HVPS's motion for summary judgment. *See Cates*, 1998-NMSC-002, ¶¶ 21, 25-26 (affirming summary judgment in favor of employer on age discrimination claim when the plaintiff failed to establish a prima facie case of discrimination and failed to show that the employer's reason for laying him off was pretextual). HVPS met its burden to produce evidence of a nondiscriminatory reason for

11

terminating Plaintiff's employment, and Plaintiff's evidence did not tend to show that HVPS's asserted reason for terminating her employment was pretextual or "merely an excuse to cover up illegal conduct." *Juneau*, 2006-NMSC-002, ¶ 23.

**{35}** HVPS came forward with extensive evidence of its nondiscriminatory reason for terminating Plaintiff's employment. To start, HVPS offered Brownfield's explanation by affidavit that she had been the Transportation Director for HVPS from September 2008 through June 2010, that she had been Plaintiff's direct supervisor, and that she had recommended terminating Plaintiff's employment due to "an unsatisfactory evaluation and ongoing performance issues." HVPS also produced Brownfield's evaluation of Plaintiff for the 2009-2010 school year, which showed that Plaintiff had fully "Met Competency" in only five of the eleven areas that were evaluated. HVPS also produced documentation showing that Plaintiff was an employee with less than three consecutive years of service and therefore her employment was at-will and could be terminated "for any reason." *See* NMSA 1978, § 22-10A-24(A) (2003) (providing that a local school board may terminate the employment of an employee with fewer than three consecutive years of service "for any reason it deems sufficient"); *see also* § 22-10A-24(D) ("A local school board or governing authority may not terminate an employee who has been employed by a school district or state agency for three consecutive years without just cause.").

**{36}** HVPS also produced documentation maintained by Brownfield of a number of performance-related incidents involving Plaintiff, dating from January of 2009 through March of 2010. The documentation included (1) a warning for dropping off a student at a different stop without proper authorization; (2) a warning for failing to use her flashers when picking up students, permitting students to get on or off her bus at other than their designated stops, and for failing to know her standards; (3) a notification that her bus had been flagged by an inspector because the emergency windows were not functioning properly and because she had failed to note the problem on her pre/post trip ticket; (4) a warning for backing into another bus at a fueling station; (5) a warning for hitting and uprooting a rail in an elementary school parking lot; (6) two notes alerting Plaintiff that her buses were dirty, one of which stated that her mirrors were a safety hazard; and (7) documentation about a grievance against Plaintiff that had been filed by another bus driver because Plaintiff had told other employees that she had found prescription painkillers in the driver's desk.

### 3. Plaintiff's Evidence of Pretext

**{37}** Thus, assuming that Plaintiff established a prima facie case, HVPS clearly met its burden to come forward with evidence of a nondiscriminatory reason for terminating her employment. As a result, the presumption of discrimination created by the prima facie case "drops from the case," *Bovee*, 2003-NMCA-025, ¶ 14 (quoting *Aikens*, 460 U.S. at 715), and Plaintiff may offer evidence that the employer's proffered nondiscriminatory reason was "pretextual or otherwise inadequate." *Juneau*, 2006-NMSC-002, ¶ 9. The question of pretext is "largely a credibility issue and . . . should normally be left exclusively to the province of the jury." *Id.* ¶ 23.

12

**{38}** In this case, however, Plaintiff's evidence did not show that HVPS's asserted reason for terminating her employment was pretextual or "merely an excuse to cover up illegal conduct." *Id.* To the contrary, HVPS's proffered evidence further demonstrated that Plaintiff did not identify a single employee whose performance was "nearly identical" so as to permit an inference of a discriminatory motive. *Smith*, 1990-NMSC-020, ¶ 11; *see also Juneau*, 2006-NMSC-002, ¶ 25 (noting that the plaintiff's evidence to show causation in the prima facie case and pretext may be the same). Plaintiff did not identify a single Hispanic employee who was retained despite (1) having a similar history of documented performance issues, (2) receiving a similar evaluation, or (3) being terminable at-will. Thus, the inadequacy of Plaintiff's evidence of other employees' performance was only exacerbated by HVPS's evidence to support its decision to terminate Plaintiff's employment.

**{39}** Plaintiff's remaining evidence that HVPS's asserted reason was pretextual consisted of (1) the fact that none of Plaintiff's marks on her evaluation were actually "Unsatisfactory"; rather, five were "Meets Competency," four were "Needs Improvement," and two were "Meets Competency/Needs Improvement"; (2) testimony by fellow employees who were surprised when Plaintiff's contract was not renewed; (3) testimony by fellow employees that Plaintiff was doing more activity trips than any other driver, including eighteen trips the month before she received notice that her contract would not be renewed; and (4) testimony by a fellow employee that Plaintiff had been sent for special training. This evidence may support an inference that Plaintiff's termination was unexpected, but it does not support an inference that her employment was terminated because she is not Hispanic.

**{40}** In our view, the following exchange with Plaintiff during her deposition both sums up her claim and demonstrates why summary judgment was appropriate:

> Q: Did anybody at the Hatch Schools ever say that they were taking away your bus routes because you were not Hispanic?
>
> A: Nobody is going to say that to me. But because I wasn't Hispanic, I was treated way different.
>
> Q: Well, if — why do you think that? Is it just because that you're the only non-Hispanic one there, or did somebody ever actually say something to you because you're non-Hispanic that you're not given a route?
>
> A: I'm the one that's white, I had to go for drug and alcohol tests. Everybody there that's Hispanic that hit the barn or hit the railing or hit a cement mixer or anything, they never went for a drug and alcohol test. Every other bus driver that's Hispanic knew exactly when the trips out of town they were going to take, they could prepare for that. I'm white, huh, I wasn't given that opportunity. It would have been nice to know. At that time we were living in

13

Radium Springs, it would have been really nice to know that I had to go out of town where I could get whatever I needed from my house. There was times that I went to Family Dollar or something so I could get something because I had to go on a trip. I didn't have time to go all the way back to my house to get something to go on a trip because Vickie refused to ask me. She would not ask me, not even when I would sit there and tell her, That trip is in two or three days, go ahead and put my name up there, I'll take it. Oh, I'm not that far yet. I'm not that far yet.

**{41}** We do not doubt the sincerity of Plaintiff's testimony. But "[t]he NMHRA protects against discriminatory treatment, not against general claims of employer unfairness." *Juneau*, 2006-NMSC-002, ¶ 14. Plaintiff's evidence does not raise a genuine issue of material fact that her non-Hispanic national origin was a motivating factor in HVPS's decision to terminate her employment. *See Smith*, 1990-NMSC-020, ¶ 9 n.1 (explaining that once the employer comes forward with evidence of a nondiscriminatory reason, the plaintiff's burden of establishing pretext "merges with the plaintiff's ultimate burden of proof of intentional discrimination" (citing *Burdine*, 450 U.S. at 256)).

## III.    CONCLUSION

**{42}** We reverse the Court of Appeals and remand for further proceedings consistent with this opinion.

**{43}    IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**JUDITH K. NAKAMURA, Chief Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**BARBARA J. VIGIL, Justice**