This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38301**

**RYAN S. LUCERO,**

Plaintiff-Appellant,

v.

**CITY OF ALBUQUERQUE,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Lisa C. Ortega, District Judge**

Gilpin Law Firm, LLC
Donald G. Gilpin
Christopher P. Machin
Albuquerque, NM

for Appellant

Esteban A. Aguilar Jr., City Attorney
Melissa M. Kountz, Assistant City Attorney
Ian G. Stoker, Assistant City Attorney
Devon Moody, Assistant City Attorney
E. Justin Pennington, Assistant City Attorney
Juan A. Martinez Luna, Assistant City Attorney
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**ATTREP, Judge.**

**{1}** Plaintiff Ryan Lucero, a firefighter with Defendant the City of Albuquerque, appeals the grant of summary judgment in favor of the City on his claims of religious

discrimination (hostile work environment) under the Human Rights Act (HRA), NMSA 1978, §§ 28-1-1 to -14 (1969, as amended through 2021),[1] and retaliation under the HRA and the Whistleblower Protection Act (WPA), NMSA 1978, §§ 10-16C-1 to -6 (2010). We affirm.

**BACKGROUND**

**{2}** In support of his hostile work environment claim, Lucero maintains that in 2007, when he was a probationary firefighter, coworkers at Station 5 had "been talking behind [his] back, writing things about [him] on a dry-erase board, harassing [him] about using the restroom, criticizing [his] choice to not don bunker gear before driving, and ignoring [him]." Lucero further maintains that in May 2016, after he was promoted to lieutenant and assigned to Station 5, his captain, A.B., "made jokes behind [his] back." As proof that his treatment at Station 5 was based on religious animus, Lucero cites an incident with A.B. in June 2016.[2] According to his deposition testimony, Lucero went to A.B.'s office to ask why there was friction between them. A.B.'s response was that he did not like how Lucero "push[ed] his politics and religion on people." After that, according to Lucero's affidavit, A.B. "grabbed [him] and threw [him] against the wall."

**{3}** In support of his retaliation claims, Lucero maintains that he was subjected to various retaliatory actions by the City following his report of the June incident to his area commander, in which he expressed his belief that he was being treated differently because of his religion. Such actions included being placed in a floating position and being denied opportunities for overtime and a transfer to his desired station.

**{4}** The City moved for summary judgment on Lucero's religious discrimination (hostile work environment) claim under the HRA, arguing principally that Lucero failed to show that any workplace harassment was based on his religion. The City also moved for summary judgment on Lucero's claims of retaliation under the HRA and WPA, arguing principally that Lucero failed to show he suffered any retaliatory action in the terms and conditions of his employment. Following a hearing on the motions, the district court granted summary judgment as to all claims, explaining only that "there are no genuine issues of material fact." *See* Rule 1-056(C) NMRA. This appeal followed.

---

1Even though some sections of the HRA were amended after the incidents giving rise to Lucero's claims, *see, e.g.*, § 28-1-7 (amended 2019, 2020), we cite the current version of the HRA throughout this opinion because the amendments are not material to our resolution of the issues in this case.

2Although Lucero additionally asserts, in an affidavit he submitted in his response to the City's motion for summary judgment, that A.B. criticized him for watching a "conservative, pro-Christian news channel," he does not rely on A.B.'s criticism of Lucero's news source as proof of religious animus. Moreover, the news source Lucero cites is apparently Fox News. In his deposition, Lucero agreed that "Fox News is a well-known Republican-affiliated news source" and testified that A.B.'s disapproval of Lucero watching Fox News was political, not religious. We observe that, although Lucero alleged discrimination based on "political views" in his administrative grievance, he did not advance such a claim in his complaint in district court, nor did he raise any claim based on the First Amendment to the United States Constitution. We therefore disregard his assertions concerning the news channel.

**DISCUSSION**

**{5}** "We review the district court's grant of summary judgment de novo." *Ulibarri v. N.M. Corr. Acad.*, 2006-NMSC-009, ¶ 7, 139 N.M. 193, 131 P.3d 43. "Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Id.* We view the facts and their reasonable inferences in favor of Lucero, the party opposing summary judgment. *See Madrid v. Brinker Rest. Corp.*, 2016-NMSC-003, ¶ 16, 363 P.3d 1197. As the appellant, however, Lucero bears the burden of persuading us that the district court erred. *See Goodman v. OS Rest. Servs. LLC*, 2020-NMCA-019, ¶ 16, 461 P.3d 906 ("[T]here is a presumption of correctness in the rulings and decisions of the district court, and the party claiming error must clearly show error." (alterations, internal quotation marks, and citation omitted)). Addressing first Lucero's religious discrimination (hostile work environment) claim and then his retaliation claims, we conclude Lucero does not meet this burden.

**I.      Religious Discrimination Under the HRA**

**{6}** Lucero contends he was subjected to a hostile work environment because of his religion, in violation of the HRA. *See* § 28-1-7(A) ("It is an unlawful discriminatory practice for . . . an employer . . . to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of . . . religion."); *Ulibarri*, 2006-NMSC-009, ¶ 10 ("Hostile environment claims are based on the cumulative effects of [harassing] acts, and these separate acts constitute a single unlawful employment practice: the practice of requiring an employee to work in a discriminatory, hostile or abusive environment."). As relevant here, to make out a hostile work environment claim, Lucero must make two basic showings. *See Ulibarri*, 2006-NMSC-009, ¶ 12 (discussing a plaintiff's burden in the hostile work environment context). First, that he was subjected to an objectively and subjectively hostile work environment. *See id.*; *see also Herald v. Bd. of Regents of Univ. of N.M.*, 2015-NMCA-104, ¶ 53, 357 P.3d 438 (providing that, to make out a hostile work environment claim, the harassing conduct must be "so severe and pervasive that the workplace is transformed into a hostile and abusive environment for the employee" (omission, internal quotation marks, and citation omitted)). Second, that the harassing conduct was based on his religion. *See* § 28-1-7(A); UJI 13-2307 NMRA (identifying as an element of an HRA discrimination claim that the alleged discrimination is "based on" (as applicable here) religion).

**{7}** The City's principal argument in support of summary judgment, both below and on appeal, relates to the second showing. The City argues that Lucero must, but did not, show that the conduct allegedly creating a hostile work environment "arose from animus toward the religion underlying his beliefs." While the City acknowledges that A.B. said he did not like the way Lucero pushed his religion on others, it contends this is not proof of religious animus. In the words of the City's counsel at the summary judgment hearing: "[T]he distinction is that, saying, 'I don't like the way you push your religion on others,' is, legally, a world apart from saying, 'I don't like your religion.'" The City contends only the latter supports a showing of animus based on Lucero's religion.

**{8}** In support of this distinction, the City relies on federal case law, citing the dearth of New Mexico cases on religion-based hostile work environment claims. *See Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 23, 135 N.M. 539, 91 P.3d 58 (providing that, "when considering claims under the [HRA], [our courts] may look at federal civil rights adjudication for guidance"). Among other authorities, the City cites *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306 (4th Cir. 2008). In that case, the federal appellate court concluded the plaintiff presented sufficient evidence that the workplace harassment was based on his religion. *Id.* at 314. Coworkers called the plaintiff "Taliban" and "towel head"—nicknames, the court observed, that would not apply to a non-Muslim employee. *Id.* From this, the court concluded there was "overwhelming evidence" that the plaintiff's coworkers "had no respect for him being a Muslim" and that "this was the basis of their [harassing] conduct." *Id.* (alteration and internal quotation marks omitted). In contrast to *Sunbelt Rentals*, A.B.'s statement that he did not like the way Lucero pushed politics and religion on people is, according to the City, "in no way specific to [Lucero's] underlying religious convictions."[3] Because of this, the City contends, any alleged workplace harassment was not *based on Lucero's religion*, and his claim of religious discrimination fails.

**{9}** In his appellate briefing, Lucero neither discusses the federal authorities on which the City relies nor attempts to grapple with the legal distinction the City propounds.[4] Instead, Lucero misapprehends the City's argument, claiming the City only contested the first showing—that Lucero was "unable to show he was subjected to a hostile work environment." As a result, the bulk of Lucero's argument is misdirected. Suffice it to say, Lucero does nothing to persuade us that the arguments actually advanced by the City, and presumably relied on by the district court, are incorrect.[5] *See Goodman*, 2020-NMCA-019, ¶ 16. What is more, Lucero's failure to directly respond to the City's arguments "constitutes a concession on the matter." *See Delta Automatic Sys., Inc. v. Bingham*, 1999-NMCA-029, ¶ 31, 126 N.M. 717, 974 P.2d 1174; *see also Vanderlugt v. Vanderlugt*, 2018-NMCA-073, ¶ 49, 429 P.3d 1269 (holding that an issue was conceded where the reply brief did not address an argument raised in the answer brief). We accordingly affirm the district court's grant of summary judgment on Lucero's religious discrimination claim.

## II. Retaliation Under the HRA and the WPA

**{10}** We next consider Lucero's claims of retaliation under the HRA and the WPA. Under the HRA, "[i]t is an unlawful discriminatory practice for . . . any person or employer to . . . engage in any form of threats, reprisal or discrimination against any

---

[3]Lucero, below and on appeal, does not argue that proselytizing was part and parcel of his religious beliefs. In fact, Lucero denies ever "push[ing] his religion on others."

[4]To the extent Lucero's briefing touches upon the City's argument, Lucero merely cites *Garcia v. Hatch Valley Public Schools*, 2018-NMSC-020, ¶ 25, 458 P.3d 378, for the proposition that the HRA does not distinguish between particular religions. But, as the City points out, the "question is not whether the [HRA] distinguishes between religions for purposes of whether and to what extent they are protected, but rather whether the offending conduct was because of [Lucero's] religion."

[5]We emphasize that our affirmance should not be construed as a wholesale acceptance of the City's view of religious animus in this context. Instead, we affirm because Lucero does not persuade us of error.

person who has opposed any unlawful discriminatory practice or has filed a complaint, testified or participated in any proceeding under the [HRA]." Section 28-1-7(I)(2). To make out a claim under this provision, a plaintiff must show that: (1) they engaged in a protected activity; (2) they suffered an adverse employment action; and (3) there is a causal connection between those two events. *Ulibarri*, 2006-NMSC-009, ¶ 16. As for the WPA, it provides:

> A public employer shall not take any retaliatory action against a public employee because the public employee . . . communicates to the public employer or a third party information about an action or failure to act that the public employee believes in good faith constitutes an unlawful or improper act.

Section 10-16C-3(A). "Retaliatory action," as used in this provision, is defined as "taking any discriminatory or adverse employment action against a public employee in the terms and conditions of public employment."[6] Section 10-16C-2(D). "An adverse employment action occurs when an employer imposes a tangible, significant, harmful change in the conditions of employment."[7] *Ulibarri*, 2006-NMSC-009, ¶ 16. Examples of such a change include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, [and] a decision causing a significant change in benefits." *Id.* (internal quotation marks and citation omitted).

**{11}**    Lucero—directing us to a United States Supreme Court, Title VII retaliation case, *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 57 (2006), and a special concurrence in *Gonzales v. New Mexico Department of Health*, 2000-NMSC-029, 129 N.M. 586, 11 P.3d 550—maintains that the standard for determining whether "an action is cognizable as an adverse employment action" is "if [the action] is reasonably likely to deter employees from engaging in protected activity." *Gonzales*, 2000-NMSC-029, ¶ 42 (Minzner, J., specially concurring). This standard, however, has not been accepted by the New Mexico Supreme Court; as just discussed, *Ulibarri* adopted a different test for adverse employment actions. *See* 2006-NMSC-009, ¶ 16. As a result, we are not persuaded by Lucero's argument that the allegedly retaliatory actions by the City are cognizable as adverse employment actions because, when "[t]aken as whole, [they were] reasonably likely to deter [him] from making a charge of discrimination." Further, his suggestion that we forge a different path than our Supreme Court has followed on the meaning of adverse employment action is not well taken. *See State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 22, 135 N.M. 375, 89

---

6Lucero does not argue that the "retaliatory action" taken against him was, to use the WPA's word, "discriminatory." *See* § 10-16C-2(D). We therefore limit our analysis to the question of "adverse employment action." Id.

7*Ulibarri* interpreted the HRA. *See* 2006-NMSC-009, ¶ 1. Neither the WPA nor, as far as we are aware, our cases interpreting the WPA, shed light on the meaning of "adverse employment action" in the WPA context. The City implicitly assumes that the term has the same meaning under the WPA as under the HRA. Because Lucero does not argue otherwise, we accept the City's assumption, but only for the purposes of this opinion.

P.3d 47 (providing that the Court of Appeals is bound by New Mexico Supreme Court precedent).

**{12}** The City's principal argument in support of summary judgment both below and on appeal is that Lucero did not suffer an adverse employment action under either the HRA or the WPA. The district court presumably relied on this argument in granting summary judgment and, for the reasons that follow, Lucero fails to establish this was error.[8] *See Goodman*, 2020-NMCA-019, ¶ 16. To guide our analysis, we divide Plaintiff's theories of adverse employment action as follows: (A) the two theories addressed in the City's motion for summary judgment; (B) the three theories Lucero first raised in his response to the City's motion; and (C) the one theory Lucero introduces on appeal.

## A. The Two Theories the City Addressed in its Motion

**{13}** Based on what Lucero pled in his complaint and testified to in his deposition, the City, in its motion for summary judgment, addressed two theories of retaliation claimed by Lucero.

### 1. Temporary Reassignment to a Floating Position

**{14}** Lucero maintains that he suffered an adverse employment action when, after the incident with A.B., he was temporarily reassigned to a floating position. Yet Lucero nowhere argues that the reassignment was accompanied by "significantly different responsibilities" or that it "caus[ed] a significant change in benefits." *Ulibarri*, 2006-NMSC-009, ¶ 16 (internal quotation marks and citation omitted). On the contrary, Lucero admitted in his deposition that the reassignment did not result in a change to his pay, benefits, or duties. Under these circumstances, we fail to see how the reassignment could be considered "a tangible, significant, harmful change" in the conditions of Lucero's employment. *Id.* By not illuminating us on this point, Lucero fails to demonstrate error.

### 2. Issuance of a Letter of Reprimand

**{15}** Lucero also contends that the City's issuance of a letter of reprimand in response to the incident with A.B. was an adverse employment action. Lucero's argument on this point, however, is meager at best. Twice Lucero tells us the City argued below that the issuance of a letter of reprimand was insufficient to meet the adverse employment action standard, but nowhere does he offer a rebuttal to that argument, or explain why the district court erred in presumably adopting the City's reasoning. "This Court has no duty to review an argument that is not adequately developed." *Titus v. City of Albuquerque*, 2011-NMCA-038, ¶ 30, 149 N.M. 556, 252 P.3d 780. We thus reject

---

8In light of this conclusion, we do not reach the parties' arguments on whether there was a causal connection between the protected activity and the adverse employment action or whether Lucero exhausted his administrative remedies as to some of these purported actions.

Lucero's contention that the letter of reprimand constituted an adverse employment action.

## B.     The Three Theories Lucero Raised in Response to the City's Motion

**{16}**     In his response to the City's motion for summary judgment, Lucero included an affidavit in which he raised three additional theories of retaliation.[9]

### 1.     Denial of Upgrade to Quality Improvement Captain

**{17}**     Lucero contends that the City's having denied him an upgrade to a higher-paying position, that of quality improvement captain, was an adverse employment action. Yet Lucero admitted below that he had not been denied the upgrade or, for that matter, any other position. Specifically, after admitting in his deposition that the City had not interfered with his certification for the position, Lucero was asked, "Have you applied for any other jobs or positions?" He answered, "Since this has happened, I have not." Lucero was again asked, "So you haven't been denied any [jobs or positions] since this?" He replied, "I haven't. I haven't yet, no." Lucero then agreed that the denial of any request to upgrade to quality improvement captain not yet made was "speculation." In addition, the City presented uncontroverted evidence that, since the time Lucero became eligible for the upgrade, there were no opportunities—for anyone—to upgrade to the position of quality improvement captain.[10] In light of this record, Lucero fails to persuade us that summary judgment was improper. *See Kreutzer v. Aldo Leopold High Sch.*, 2018-NMCA-005, ¶ 27, 409 P.3d 930 ("The non-movant [in summary judgment] cannot meet th[eir] burden with allegations or speculation but must present admissible evidence demonstrating the existence of a genuine issue of fact requiring trial.").

### 2.     Denial of Transfer to Station 20

**{18}**     Lucero also contends that his having been denied a transfer to Station 20 was an adverse employment action. Although he tells us a firefighter with less seniority filled the slot, Lucero's argument more or less ends there. Lucero neither cites any evidence nor makes any argument showing how the denial of the transfer constituted a "harmful change in the conditions of [his] employment," *see Ulibarri*, 2006-NMSC-009, ¶ 16, such that it might be deemed an adverse employment action. For example, Lucero cites no evidence suggesting that such a transfer would have been considered a promotion or

---

9In its reply in support of the motion for summary judgment, the City strenuously argued that these theories should be rejected on the ground that Lucero had not mentioned them before. The City further argued that Lucero's affidavit contradicted his prior sworn statements. Essentially, the City was claiming that Lucero's affidavit was an impermissible "post-hoc effort[] to nullify unambiguous admissions under oath" in an attempt to defeat summary judgment. *Rivera v. Trujillo*, 1999-NMCA-129, ¶ 12, 128 N.M. 106, 990 P.2d 219. Although we believe these arguments have merit, the City does not reassert them on appeal. We accordingly address Lucero's additional theories of retaliation on the merits.
10Directing us to his affidavit testimony, Lucero maintains that there was such evidence. Lucero testified that "[o]ther firefighters with less seniority than [him] have been upgraded to [q]uality [i]mprovement [c]aptain." Lucero's testimony, however, says nothing about the timing of these upgrades—i.e., that they occurred *after* Lucero became certified for such position.

otherwise would have improved his benefits. *See id.* Without such evidence or argument, Lucero fails to persuade us of error.

**{19}** Lucero claims in his reply brief that the "denial of a transfer is considered an adverse employment action." In support, Lucero cites a portion of *Ulibarri* discussing the types of discrete employment practices that trigger the statutory time limit on claims. *See id.* ¶ 9. Neither this nor any other portion of *Ulibarri* lends support to Lucero's contention that the denial of *any* transfer—including a purely lateral transfer with no change in responsibilities or benefits—constitutes an adverse employment action. *See id.* ¶ 16 (providing that an adverse employment action occurs when an employer imposes a "tangible, significant, harmful change in the conditions of employment," such as "failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" (internal quotation marks and citation omitted)); *cf. Fernandez v. Farmers Ins. Co. of Ariz.*, 1993-NMSC-035, ¶ 15, 115 N.M. 622, 857 P.2d 22 ("The general rule is that cases are not authority for propositions not considered." (internal quotation marks and citation omitted)).

### 3.      Temporary Administrative Assignment and Loss of Overtime

**{20}** Lucero next argues that his having been denied the opportunity to work overtime while on temporary administrative assignment—a status he held following, and presumably as a consequence of, the incident with A.B.—was an adverse employment action.[11] Ultimately, Lucero fails here, too, to persuade us of error.

**{21}** Citing *Reinhardt v. Albuquerque Public Schools Board of Education*, 595 F.3d 1126 (10th Cir. 2010), Lucero argues that "the loss of overtime can be considered an adverse employment action." *See id.* at 1133. Be that as it may, we think *Reinhardt* is of little help to Lucero. *Reinhardt* states that "a denial of overtime opportunity is [not] always a materially adverse action" and that whether such a denial rises to that level depends on the facts of the case. *See id.* Lucero, however, does not explain how any loss of overtime opportunity rose to the level of an adverse employment action, and we will not develop such an argument for him. *See Elane Photography, LLC*, 2013-NMSC-040, ¶ 70. Moreover, Lucero testified at his deposition that he had no idea how much overtime he had missed out on while on administrative assignment. Absent some evidence that any overtime was lost, Lucero's claim is speculative, and his burden below was unmet. *See Kreutzer*, 2018-NMCA-005, ¶ 27.

**{22}** In short, this theory provides no compelling reason to reverse the grant of summary judgment on Lucero's HRA and WPA retaliation claims.

---

[11]We decline to consider Lucero's argument that his placement on administrative assignment (without a corresponding loss in overtime) is an adverse employment action, as the argument is without explanation and support. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)); *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed . . . on appeal.").

## C.    Lucero's New Theory on Appeal: The Physical Assault

**{23}**    Lucero claims in his brief in chief that "being physically assaulted" by A.B. was an adverse employment action. As the City aptly points out, Lucero neither alleged in his complaint nor claimed in his response to the City's motion for summary judgment that the assault constituted an adverse employment action. As a result, this claim is unpreserved and unreviewable.[12] *See Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717 ("To preserve an issue for review on appeal, it must appear that [the] appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court.").

## CONCLUSION

**{24}**    For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of the City.

**{25}    IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**MEGAN P. DUFFY, Judge**

---

[12]In response to the City's argument that he failed to preserve this issue, Lucero directs us to page 145 of the record proper. But nothing on that page suggests Lucero preserved the claim that A.B.'s assault amounted to an adverse employment action. Moreover, contrary to the rules of appellate procedure, Lucero failed to include in his brief in chief "a statement explaining how the issue was preserved in the court below." Rule 12-318(A)(4) NMRA. Such failure merits disregard of this issue on appeal. *See Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue.").