**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 1, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MILOSLAV MULLER,

     Plaintiff - Appellant,

v.

SONNY PERDUE, Secretary,
U.S. Department of Agriculture;
DR. STEVEN R. ENGLAND, Veterinarian
of the New Mexico Livestock Board;
DANIEL MANZANARES, Executive
Director, New Mexico Livestock Board;
DR. DAVE FLY, New Mexico State
Veterinarian; DR. TIMOTHY J.
HANOSH, New Mexico State
Veterinarian, STAFFING SOLUTIONS,
Albuquerque, New Mexico business entity,

     Defendants - Appellees.

No. 17-2185
(D.C. No. 1:13-CV-00431-MCA-KK)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **EID**, and **CARSON**, Circuit Judges.
_____

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Miloslav Muller, appearing pro se, appeals the dismissal of his retaliation and defamation complaint against the Secretary of the U.S. Department of Agriculture ("USDA"), four state officials with the New Mexico Livestock Board ("NMLB"), and Staffing Solutions Southwest, Inc. (sued as "Staffing Solutions"). The district court dismissed some of the claims under Fed. R. Civ. P. 12(b)(1), (5) and (6) and 12(c), and granted summary judgment on the remaining claims under Fed. R. Civ. P. 56(a). We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

Dr. Muller was a veterinary medical officer and area epidemiology officer with the USDA until his 2008 termination. His epidemiologist tasks required him to work with the NMLB.

This case, *Muller III*, is Dr. Muller's third lawsuit regarding the same underlying matters.[1] In his *Muller III* complaint, Dr. Muller alleged that he engaged in protected opposition to discrimination on March 31, 2007, when he disclosed that the USDA and the NMLB allowed an infection agent, scrapie prion, to enter the

---

[1] Dr. Muller filed *Muller III* five weeks after he voluntarily dismissed *Muller II*.

*Muller I* was a Title VII and 42 U.S.C. § 1983 suit against the NMLB filed in 2009. The district court dismissed that complaint for failure to state a claim because the NMLB was not Dr. Muller's employer, and this court affirmed. *Muller v. Culbertson*, 408 F. App'x 194, 198 (10th Cir. 2011).

*Muller II*, filed in 2012, alleged Title VII and NMHRA claims against the USDA Secretary, the NMLB Defendants, and two Staffing Solutions employees. But Dr. Muller failed to effect timely service on any defendants as required by Fed. R. Civ. P. 4(m). The court directed Dr. Muller to show cause why the complaint should not be dismissed. Dr. Muller instead moved to withdraw his complaint. The district court granted his motion and dismissed *Muller II* without prejudice.

human food chain on the Navajo Reservation in New Mexico, and that a USDA employee had committed fiscal fraud. He further alleged that in May 2007, four NMLB employees—Dr. Steven R. England, Daniel M. Manzanares, Dr. Dave Fly, and Dr. Timothy J. Hanosh—wrote negative comments about Dr. Muller's job performance in correspondence sent to his USDA supervisor. In June 2008, the USDA proposed to remove Dr. Muller, specifying 71 instances of improper conduct. One related to the poor job performance described by the four NMLB employees. The USDA terminated Dr. Muller in August 2008.

Based on the foregoing allegations, Dr. Muller asserted retaliation claims against the Secretary of the USDA under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.; retaliation claims against the four NMLB employees ("NMLB Defendants") under the New Mexico Human Rights Act ("NMHRA"), N.M. Stat. Ann. § 28-1-7; retaliation claims against Staffing Solutions under Title VII and the NMHRA; and defamation claims against the NMLB Defendants and Staffing Solutions.

The retaliation claims stemmed from Dr. Muller's March 2007 protected activities, and were based on NMLB's correspondence and numerous USDA actions, including its August 2008 termination of Dr. Muller. The defamation claims were based on the NMLB Defendants' correspondence to his USDA supervisor.

As to the USDA Secretary, the district court dismissed the Title VII retaliatory discharge claim as barred by the applicable statute of limitations. In doing so, the court denied Dr. Muller's request to equitably toll the Title VII limitations period.

3

The court later dismissed the remaining Title VII retaliation claims against the USDA on summary judgment.

As to the NMLB Defendants, the district court dismissed all of the NMHRA retaliation claims, except those against Dr. England, for insufficient service of process. The court later dismissed the remaining retaliation claims against Dr. England on summary judgment.

The district court dismissed the defamation claims against the NMLB Defendants as time-barred.

## II. DISCUSSION

We address the dismissed claims against the Secretary of USDA and then turn to the dismissed claims against the NMLB Defendants.[2] Because Dr. Muller is pro se, we liberally construe his filings but do not act as his advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

### A. *Dismissal of Title VII Retaliation Claims Against USDA*

Dr. Muller exhausted his administrative remedies as to his Title VII retaliation claims against the USDA by filing three different administrative complaints with the EEOC—Complaint 60, Complaint 783, and Complaint 27. Complaint 60 concerned

---

[2] The district court dismissed the Title VII claims against Staffing Solutions under Rule 12(b)(1) for failure to exhaust administrative remedies and declined to exercise supplemental jurisdiction over the state law NMHRA and defamation claims against it. Dr. Muller has waived any appellate challenge to the dismissal of Staffing Solutions because he failed to contest those rulings in his opening brief. *Coleman v. B–G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997) ("Issues not raised in the opening brief are deemed abandoned or waived.").

4

Dr. Muller's retaliatory discharge claim. Complaint 783 alleged three retaliatory actions by the USDA in early 2008, and Complaint 27 alleged nine retaliatory actions the USDA took in 2006 and 2007.

1. **Rule 12(c) Dismissal of Retaliatory Discharge (Complaint 60) Claim as Time-Barred**

Dr. Muller filed *Muller III* on May 7, 2013. The statute of limitations for his Title VII retaliatory discharge claim against the USDA—the claims he administratively exhausted in Complaint 60—expired on November 2, 2012, the date he filed his *Muller II* complaint. Dr. Muller argues the district court erred in not applying the doctrine of equitable tolling to extend the statute of limitations. We review a "district court's refusal to apply equitable tolling for an abuse of discretion." *Barnes v. United States*, 776 F.3d 1134, 1148–49 (10th Cir. 2015) (internal quotation marks omitted).

The district court explained in great detail why the Complaint 60 claims were time-barred. Dr. Muller had timely filed these claims in *Muller II* but his voluntary dismissal of the *Muller II* complaint did not toll the applicable limitations periods. *See Brown v. Hartshorne Pub. Sch. Dist*. *No. 1*, 926 F.2d 959, 961 (10th Cir. 1991) (holding that a voluntary dismissal without prejudice under Fed. R. Civ. P. 41 leaves the parties as though the action had never been brought, and does not toll Title VII's limitations period), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

5

Dr. Muller concedes the Complaint 60 claims were untimely filed in *Muller III*, but he argues the district court should have equitably tolled the deadline. Equitable tolling is warranted in Title VII cases "only if the circumstances of the case rise to the level of active deception which might invoke the powers of equity to toll the limitations period" such as if the plaintiff was "lulled into inaction by . . . the courts," has been "actively misled, or has in some extraordinary way been prevented from asserting his or her rights." *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1267 (10th Cir. 1996) (internal quotation marks omitted).

Dr. Muller argues equitable tolling applies because the district court did not warn him in *Muller II* that the dismissal without prejudice would not toll the limitations period, thus actively deceiving him and lulling him into inaction. We agree with the district court that nothing in its *Muller II* orders gave Dr. Muller any reason to believe he was excused from complying with the applicable statute of limitations.

Dr. Muller also argues more specifically that the district court was obligated to notify him that his dismissal of *Muller II* would not toll the limitations period, citing *Jaxon v. Circle K Corp.*, 773 F.2d 1138 (10th Cir. 1985), in which we cautioned that "[d]istrict courts must take care to insure that *pro se* litigants are provided with proper notice regarding the complex procedural issues involved in summary judgment proceedings," *id*. at 1140 (internal quotation marks omitted). But the facts of *Jaxon* are entirely different. There, the pro se plaintiff presented evidence that would preclude summary judgment, but some of the evidence was not in proper form.

6

The plaintiff asked the court for additional time to submit verified affidavits, and we ruled the court's refusal was an abuse of discretion. *Id.* Here, there is no evidence Dr. Muller was diligent, nor was he misled.

Beyond this distinction, the Supreme Court held after *Jaxon* that federal district court judges have no obligation to calculate or warn pro se litigants about statutes of limitations, as they "have no obligation to act as counsel or paralegal to *pro se* litigants." *Pliler v. Ford*, 542 U.S. 225, 231 (2004). "[N]o case has ever held that a *pro se* litigant should be given actual notice of a statute of limitations." *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 244 (3d Cir. 2013) (internal quotation marks omitted).

Unrepresented parties are required to comply with the same substantive law and procedural rules as a represented party. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2002). Dr. Muller has not shown that any extraordinary circumstances stood in his way to warrant equitable tolling. The district court did not abuse its discretion in denying his equitable tolling request.

2. **Rule 56(a) Summary Judgment for USDA on Remaining Title VII Retaliation Claims**

The district court granted summary judgment in favor of the USDA on Dr. Muller's retaliation claims based on Complaints 783 and 27, finding that

Dr. Muller did not present any evidence of a materially adverse employment action;[3] a causal connection between the challenged actions and his protected opposition; or evidence that the USDA's proffered legitimate, non-retaliatory reasons for its actions were pretextual. *See Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1233–34 (10th Cir. 2015) (describing plaintiff's evidentiary burdens to withstand summary judgment on a Title VII retaliation claim). Dr. Muller challenges only evidentiary matters related to that ruling.

He first contends the district court erred in denying his objection to all of the affidavits from USDA employees, alleging generally that the affidavits were not based on personal knowledge. The court rejected his objection because Dr. Muller did not identify any portion of any USDA affidavit that was not based on the affiant's personal knowledge. The court further stated that, in setting out the undisputed facts, it first determined that any of the facts from an affidavit or declaration that it relied upon were based on the affiant's personal knowledge.

"[A] district court's assessments of the admissibility and probative value of affidavits at the summary-judgment phase . . . are reviewed for an abuse of

---

[3] In the claims based on Complaints 783 and 27, Dr. Muller alleged that the USDA retaliated against him by denying his request to attend live bird marketing system training; ordering him to complete an indemnity calculation for 101 dairy cows; comingling records of healthy cows with responder cows, increasing his workload; changing his hours from 9:00 a.m. to 5:30 p.m. to 8:00 a.m. to 4:30 p.m.; interfering with his ability to attend the daily TB taskforce meetings; denying him overtime; requiring him to copy others on his email requesting overtime; cancelling approval of his attendance at an agricultural worktable functional exercise; accusing him of allowing illegal movement of cattle; and assigning him a new duty to prepare indemnity calculations.

discretion." *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015). Based on our review of the USDA's affidavits and the district court's order, we find no abuse of the court's discretion.

Dr. Muller next argues the district court erred in denying his request that it take judicial notice of volumes of documents related to his protected activities, which he submitted while motions to dismiss were pending. The magistrate judge denied the request and struck the documents, ruling they were not relevant to the pending motions to dismiss. Dr. Muller objected and refiled these documents. The district court struck the filings, ruling they were not related to the pending motions to dismiss. It further ruled Dr. Muller's submission of these documents violated the district court's local rules limiting the number of exhibits attached to filings to no more than 50 pages and prohibiting a surreply without prior court authorization. *See* D.N.M.LR-Civ. 7.4(b), 10.5. Based on our review of the proposed documents, we again find no abuse of the court's discretion. *See Ellis*, 779 F.3d at 1201.

## B. *Dismissal of NMLB Claims*

### 1. **Dismissal of Claims for Insufficient Service of Process**

Four days before the deadline to effect service of process in *Muller III*, Dr. Muller attempted service by sending the summons by certified mail to Mr. Manzanares, Dr. Fly and Dr. Hanosh at their place of business, not their usual place of abode. Mr. Manzanares refused to sign for or accept service, and the certified letters to Dr. Fly and Dr. Hanosh were signed for by persons who were not authorized to accept service on their behalf. The district court explained in detail

9

why these attempts at service were insufficient under the applicable rules. *See* Fed. R. Civ. P. 4(e)(1) (allowing service by "following state law . . . in the state where the district court is located or where service is made"); N.M. R. Ann. 1-004(E)(3) (stating that service by mail is complete when it is signed by the defendant or a person authorized to accept service); N.M. R. Ann. 1-004(F)(3) (stating that service of process on an individual's place of business is proper only if service of process has first been attempted on the individual personally and at the person's usual place of abode). Two months after the deadline to complete service, Dr. Muller moved for an extension of time to effect service. The district court denied this motion, and Dr. Muller argues this was error.[4]

Dr. Muller describes the service rules as procedural niceties and asserts they are confusing even to attorneys. He argues the district court was obligated to give him additional time to comply with the service of process rules because he is proceeding pro se. Federal Rule of Civil Procedure 4(m) states that "if the plaintiff

---

[4] The court initially denied the extension request as moot because it had dismissed the retaliation claims against the NMLB Defendants for failure to exhaust administrative remedies. But Dr. Muller later demonstrated that he had exhausted his administrative remedies in an amended complaint. The NMLB Defendants then renewed their motion to dismiss for insufficient service of process, which the court granted. The court then *sua sponte* reconsidered Dr. Muller's earlier request for an extension of time to effect service, and denied the request for lack of good cause.

The NMLB Defendants argue that we lack jurisdiction over this issue because Dr. Muller filed his appeal more than thirty days after the district court's *initial* denial of his extension request on September 30, 2014. But that was not a final order, and the district court's later denial of Dr. Muller's extension request on September 29, 2016, did not become a final order until the court entered final judgment on September 22, 2017, which Dr. Muller timely appealed on October 23, 2017.

shows good cause for the failure [to effect timely service], the court must extend the time for service for an appropriate period." "We review the district court's dismissal for untimely service for an abuse of discretion." *Espinoza v. United States*, 52 F.3d 838, 840 (10th Cir. 1995).

We find no abuse of the court's discretion. As noted above, pro se litigants must follow all of the procedural rules, and by the time Dr. Muller filed *Muller III*, the service-of-process rules had already been explained to him in *Muller II* when he also failed to serve the Defendants by Rule 4(m)'s deadline. In *Muller III*, Dr. Muller made no attempt to serve the NMLB Defendants at their regular place of abode, nor did he attempt to re-serve them when his initial efforts were unsuccessful, when these Defendants moved to dismiss based on insufficient service, or at any time in the four years before the district court finally denied his extension request. We see no good cause to warrant an extension of time to effect proper service.

2. **Summary Judgment for Dr. England**

Defendant Dr. Steven England wrote an email to Dr. Muller's USDA supervisor in May 2017, at the supervisor's request, stating Dr. Muller was incapable of doing his job as the designated epidemiologist. Dr. Muller alleged the email was in retaliation for his March 31, 2017 opposition to discrimination.

The NMHRA makes it unlawful for any person or employer to "engage in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice." N.M. Stat. Ann. § 28-1-7(I)(2). To establish a prima facie case of retaliation under the NMHRA, Dr. Muller needed to present

11

evidence that "(1) he engaged in protected activity, (2) he was subject to adverse employment action subsequent to, or contemporaneous with the protected activity, and (3) a causal connection exists between the protected activity and the adverse employment action." *Juneau v. Intel Corp.*, 127 P.3d 548, 552 (N.M. 2005).

The district court granted summary judgment in favor of Dr. England, ruling that Dr. Muller presented no evidence of a causal connection because there was no evidence that Dr. England had any knowledge of Dr. Muller's protected activities. The court therefore ruled Dr. Muller's protected activities could not have been a motivating factor in his decision to write the email to Dr. Muller's supervisor. Dr. Muller contends this was error. Our review is de novo. *Anderson Living Tr. v. Energen Res. Corp.*, 886 F.3d 826, 831 (10th Cir. 2018).

Dr. Muller first contends the district court ignored his argument that his NMHRA complaint was in the public interest. But this contention has nothing to do with whether he could show causation. The court's only relevant consideration was whether Dr. England was entitled to summary judgment under Rule 56(a), under which a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The district court properly evaluated the summary judgment motion under this standard.

Dr. Muller next contends he was unable to engage in full discovery, claiming the district court's discovery rulings were prejudicial. But he fails to identify any of the court's discovery orders that he challenges, and he concedes that he did not

12

conduct discovery because he did not want to spend the money to do so. We find no error.

Finally, Dr. Muller contends the district court erred in ruling he failed to present evidence of a causal connection between his protected activities and Dr. England's email regarding his job performance. He argues there is a causal connection because less than two months elapsed between his protected opposition and Dr. England's email to his supervisor. But that time frame is irrelevant because the record supports the district court's determination that Dr. Muller failed to present any evidence that Dr. England knew about Dr. Muller's protected opposition. Unless a defendant knows that a plaintiff is or has engaged in protected opposition to discrimination, it cannot retaliate against that plaintiff because of the protected activity. *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1195 (10th Cir. 2007); *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) (A "plaintiff must show that the individual who took the adverse action against him knew of the . . . protected activity."). The district court correctly ruled that Dr. England was entitled to summary judgment.

### III.  **CONCLUSION**

We grant the Unopposed Motion for Withdrawal of Counsel Carmela D. Starace for the NMLB Defendants.  We affirm for substantially the same reasons stated by the district court in its multiple orders, which were rendered final by judgment entered on September 22, 2017.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge