This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41236

**GEORGE ADALBERTO LOPEZ,**

Plaintiff-Appellant,

v.

**CITY OF LAS CRUCES,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Casey Fitch, District Court Judge**

The Law Offices of Lisa A. Elizondo
Lisa A. Elizondo
El Paso, TX

Scanes Yelverton Talbert, LLP
Tyler Talbert
Waco, TX

for Appellant

Robles, Rael & Anaya, P.C.
Renni Zifferblatt
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**WRAY, Judge.**

**{1}** George Adalberto Lopez (Plaintiff), formerly employed as the Equal Employment Opportunity (EEO) and Americans with Disabilities Act (ADA) coordinator for the City of

Las Cruces (the City), appeals the district court's grant of summary judgment in favor of the City. Plaintiff contends that summary judgment should not have been granted because he presented evidence sufficient to support his claims that the City's termination of his employment violated the New Mexico Human Rights Act (NMHRA), NMSA §§ 28-1-1 to -14 (1969, as amended through 2024). We conclude that Plaintiff established a prima facie case for age and/or sex discrimination, and though the City established a legitimate business reason for Plaintiff's termination, Plaintiff produced evidence to rebut the proffered reason. *See* § 28-1-7(A) (prohibiting discrimination based on age or sex); *see also Smith v. FDC Corp.*, 1990-NMSC-020, ¶¶ 9, 11, 109 N.M. 514, 787 P.2d 433 (approving the application of the burden shifting framework set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)); *Cates v. Regents of N.M. Inst. of Min. & Tech.*, 1998-NMSC-002, ¶¶ 15-16, 124 N.M. 633, 954 P.2d 65 (describing the three-part framework). We therefore reverse summary judgment on Plaintiff's age and/or sex discrimination claims. Because Plaintiff did not establish a prima facie case for retaliation, however, we affirm the dismissal of Plaintiff's retaliation claim. *See* § 28-1-7(I)(2) (prohibiting retaliation); *see also Cates*, 1998-NMSC-002, ¶ 24 (explaining that "[t]o avoid summary judgment," the employee had to present some evidence, more than "mere conjecture," that the employer's "explanation [was] a pretext for intentional age discrimination"). We accordingly affirm in part and reverse in part.

## DISCUSSION

{2}     Because this is a memorandum opinion, we discuss the facts only to the extent necessary to resolve the appellate issues. We review "an order granting summary judgment de novo," *Madrid v. Brinker Rest. Corp.*, 2016-NMSC-003, ¶ 16, 363 P.3d 1197, and "consider the whole record for evidence that places a material fact at issue," *Cates*, 1998-NMSC-002, ¶ 9. Preferring a trial on the merits, we generally disfavor summary judgment. *See Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 8, 148 N.M. 713, 242 P.3d 280. It is well established that "[s]ummary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Ulibarri v. N.M. Corr. Acad.*, 2006-NMSC-009, ¶ 7, 139 N.M. 193, 131 P.3d 43. To evaluate whether "facts are material, the court must look to the substantive law governing the dispute." *Romero*, 2010-NMSC-035, ¶ 11 (internal quotation marks and citation omitted). Generally, discrimination and retaliation claims can be shown using the *McDonnell-Douglas* framework, in which (1) the plaintiff establishes a prima facie case for discrimination and/or retaliation; (2) the employer demonstrates a legitimate business reason for the termination; and (3) the burden returns to the plaintiff to offer evidence that the employer's reason was false or pretext. *See Cates*, 1998-NMSC-002, ¶ 16 (describing the *McDonnell-Douglas* analysis in the context of a discrimination claim); *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 9, 139 N.M. 12, 127 P.3d 548 (applying the *McDonnell-Douglas* framework to retaliation claims). Plaintiff argues that he met the evidentiary burden to defeat the City's motion for summary judgment for both of the discrimination claims as well as the retaliation claim. We discuss Plaintiff's discrimination and retaliation claims in turn.

## I.      Age and/or Sex Discrimination

{3}     The parties do not dispute that Plaintiff established a prima facie case of age and sex discrimination or that the City established a legitimate business reason for Plaintiff's termination. The district court appears to have assumed as much when granting the City's motion from the bench and focused on the evidence supporting pretext. Because we conclude that Plaintiff produced sufficient evidence to raise a genuine issue of fact related to pretext, we briefly review the evidence supporting the prima facie case and the City's legitimate business reason for termination.

{4}     Our whole-record review demonstrates that Plaintiff produced evidence to establish a prima facie case of age and sex discrimination, and the City, in turn, provided "a legitimate, non-discriminatory reason for its decision." *See Cates*, 1998-NMSC-002, ¶¶ 9, 16. To establish a prima facie case of age and sex discrimination, Plaintiff was required to produce evidence on four factors. *See id.* ¶ 17 (describing the factors). In the district court, the City conceded the first and third factors. Plaintiff established the second factor with evidence of positive performance reviews that were submitted after the incident on which the City relied to terminate his employment. *See id.* (identifying the second factor as whether "plaintiff was qualified to continue in the position"). Plaintiff established the fourth factor with evidence that his replacement was younger and female. *See id.* (stating the fourth factor as whether "plaintiff[']s position was filled by someone not a member of the protected class"). In response to Plaintiff's prima facie case, the City established that it had a legitimate business reason to terminate his employment—because at a new employee orientation training held on August 7, 2017, his conduct resulted in two formal complaints and was determined, after an investigation, to have violated the City's policy. We agree with the parties and the district court that this evidence satisfied the first two steps of the *McDonnell-Douglas* framework.

{5}     The burden therefore shifted to give Plaintiff the "opportunity to rebut the employer's proffered reason as pretextual or otherwise inadequate." *See Juneau*, 2006-NMSC-002, ¶ 9. Plaintiff points to evidence about the timing of his termination in relation to a discrimination claim that he had filed on behalf of another employee. That evidence, however, would not demonstrate that the City's legitimate business reason was pretext for age and sex discrimination, but instead would be related to retaliation, if anything. *See Romero*, 2010-NMSC-035, ¶ 20 (explaining that to create a genuine dispute of material fact, the fact established must be "necessary to give rise to a claim" under the relevant substantive law (internal quotation marks and citation omitted)). Plaintiff also contends that the City's legitimate business reason is belied by evidence of the "larger framework of a pervasive culture aimed at denying comparable opportunities and benefits to older, male employees." The only record evidence to support this "culture" is (1) Plaintiff's deposition testimony about how he felt and what he heard from others, without any specific examples that would demonstrate or create a reasonable inference of age or sex discrimination; (2) Plaintiff's testimony that his supervisor "regularly made statements" that showed bias against older, male employees, but the only example involved a comment about a male employee whom the supervisor thought was unqualified for a promotion, without reference to that employee's age; and (3) another employee's testimony that the supervisor sometimes showed "favoritism" to two female

employees but no evidence that other, unfavored employees were older or male. This evidence is either irrelevant to establish that the City's reason for terminating Plaintiff was pretext for age and/or sex discrimination or is not "evidence, circumstantial or direct, that a factfinder might reasonably use to conclude that [the City] intended to discriminate" against Plaintiff because he was an older, male employee. *See Cates*, 1998-NMSC-002, ¶ 26.

**{6}** Other evidence, however, raised a genuine dispute of material fact that the City's justification for terminating Plaintiff was pretext. *See id.* ¶ 19 (noting that "in cases where the plaintiff and the alleged replacement are close in age, the Court should look not only to the actual age difference, but to the surrounding circumstances to determine if plaintiff has raised an inference of discrimination." (internal quotation marks and citation omitted); *Garcia v. Hatch Valley Pub. Schs.*, 2018-NMSC-020, ¶ 38, 458 P.3d 378 (discussing that pretext may be shown if the plaintiff can identify another employee outside the protected class with similar employment circumstances and infractions but who was not terminated). Plaintiff provided evidence that the City's prior ADA coordinator, who was a slightly younger woman, demonstrated "questionable" conduct in her trainings that made employees feel "uncomfortable" or "embarrassed." Employees discussed their concerns with supervisors, yet, despite these reports, the City "never disciplined the prior employee." The City argues that the prior coordinator was not fired because, unlike Plaintiff, no formal complaints against her were submitted and she was "apologetic" when counseled about her conduct. Plaintiff argues that "the City's tolerance of a prior female coordinator undermines its claimed reason for" terminating Plaintiff's employment, and that argument is reinforced by evidence of Plaintiff's entirely positive reviews of his past performance and absence of discipline until his termination. The City and Plaintiff dispute the possible legal conclusions a fact-finder could draw from these facts. Because these facts are material to the substantive dispute, judgment as a matter of law is inappropriate under Rule 1-056(C) NMRA. *See Romero*, 2010-NMSC-035, ¶ 11 ("The inquiry's focus should be on whether, under substantive law, the fact is necessary to give rise to a claim." (internal quotation marks and citation omitted)).

## II. Retaliation

**{7}** Plaintiff contends that he established a prima facie case for retaliation under the NMHRA and that the evidence was sufficient to raise a genuine issue of fact that the City's legitimate business reason was pretext for retaliation. Three factors establish a prima facie case of retaliation. *See Juneau*, 2006-NMSC-002, ¶ 11. The primary dispute involves the first factor, whether Plaintiff "engaged in a protected activity." *See id.* Plaintiff's retaliation claim is based on the allegation that he (1) accepted and processed an ADA discrimination complaint from another employee against Plaintiff's supervisor, and (2) was shortly thereafter terminated. Because, as we explain, we conclude that Plaintiff did not establish that he was engaged in a protected activity under the NMHRA, and therefore did not establish a prima facie case, we do not reach the pretext question.

**{8}** The NMHRA prohibits retaliation against "any person who has opposed any unlawful discriminatory practice or has filed a complaint, testified or participated in any proceeding under the [NMHRA]." Section 28-1-7(I)(2). Plaintiff maintains that "participating in any manner in an investigation of an alleged ADA violation" is engagement in a protected activity and cites *Foster v. Mountain Coal Co.*, 830 F.3d 1178 (10th Cir. 2016). In *Foster*, the plaintiff alleged that his employer retaliated against him based on requests he made for accommodation under the ADA and the Tenth Circuit Court of Appeals noted parenthetically that "[b]y its own terms, the ADA retaliation provision protects 'any individual' who has opposed any act or practice made unlawful by the ADA." 830 F.3d at 1186-87 (internal quotation marks and citation omitted). In the present case, however, to determine whether Plaintiff engaged in protected activity, we rely not to the ADA but on the NMHRA. And under that statute, to establish engagement in a protected activity, the circumstances must demonstrate that Plaintiff "opposed any unlawful discriminatory practice" or "filed a complaint, testified or participated in any proceeding under the [NMHRA]." *See* § 28-1-7(I)(2).

**{9}** Plaintiff has not demonstrated how the record supports such a conclusion. As we set forth, Plaintiff worked as the EEO/ADA coordinator for the City. Plaintiff testified that he met with an employee seeking accommodations, created a file, took the already-drafted complaint against the supervisor, made a copy, emailed the employee to confirm receipt, and sent notification to the supervisor and the City attorney. During a regular status meeting, Plaintiff raised the issue with the supervisor, who "became upset and left the office." A few days later, Plaintiff was placed on administrative leave and fired a few weeks after that. Plaintiff presents no evidence and cites no legal authority to support the contention that these actions amounted to opposition of any unlawful practice by the City. *See, e.g.*, *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344-47 (6th Cir. 2021) (considering the facts and circumstances to determine whether under governing federal law, a reasonable jury could conclude that a human resources employee's actions could be considered "opposition" that would establish a protected activity). The question is then whether these actions raise a genuine issue of material fact that Plaintiff "filed a complaint, testified or participated in any proceeding under the [NMHRA]." *See* § 28-1-7(I)(2). The record reveals no evidence that could support such a conclusion. The employee's complaint itself is not in the record. Plaintiff did not testify that this complaint initiated an NMHRA proceeding or was necessary to bring an action under the NMHRA. Plaintiff cites no regulation, policy, or other law to draw a connection between this employee's complaint, Plaintiff's action, and "any proceeding under the [NMHRA]." *See id.* As a result, we conclude that the evidence did not create a genuine issue of material fact that Plaintiff engaged in a protected activity.

## CONCLUSION

**{10}** We affirm in part and reverse in part.

**{11} IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**KRISTINA BOGARDUS, Judge**